IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTWON DESHANE JENKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 18-cv-610-DWD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER
ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
UNDER 28 U.S.C. § 2255**

**DUGAN, District Judge:**

On March 18, 2015, a jury found Petitioner Antwon Deshane Jenkins guilty for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 in Case No. 13-cr-30125 (13-cr-30125, Doc. 1). On September 18, 2015, the Court sentenced Jenkins to 27 months in prison to run consecutively to his sentence in Case No. 12-cr-30239, to be followed by 3 years of supervised release to run concurrent to the supervised release in Case No. 12-cr-30239[1] (13-cr-30125, Doc. 542, Doc. 567). The Seventh Circuit affirmed Jenkins' sentence on March 13, 2017 in *United States v. Jenkins*, 850 F.3d 912 (7th Cir. 2017).

On March 26, 2018, Jenkins timely[2] filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). He filed supplements to his Motion

---

[1] In Case No. 12-cr-30239, an amended judgment was entered on January 28, 2020 sentencing Jenkins to 293 months in prison to run consecutively to his sentence in this case. (12-cr-30239, Doc. 406).
[2] See 28 U.S.C. § 2255(f)(1).

1

on April 5, 2018 (Doc. 5) and May 22, 2018 (Doc. 19).  Jenkins' petition advances four grounds for relief, more succinctly described as:

> Ground 1: The District Court erred in denying Jenkins' motion to substitute counsel in violation of the Sixth Amendment (Doc. 1); and
>
> Grounds 2 & 3: Jenkins' trial attorney provided ineffective assistance which negatively impacted Jenkins' trial and subsequent appeal.  More specifically, Jenkins argues that his trial attorney mishandled evidence related to the traffic stop leading to Jenkins' arrest and wrongly conceded that the traffic stop was lawful.  (Doc. 1, Doc. 19).

Jenkins also requests that a different judge review his petition (Doc. 1).  As the undersigned did not preside over Jenkins' criminal proceedings, this requested relief is moot and the Court will not substantively address this argument.  In sum, Jenkins claims that had his attorney acted differently and/or had different counsel been appointed, the outcome of his trial and appeal would have been different (Doc. 1, Doc. 19).

Upon review of Jenkins' Petition (Doc. 1), Respondent's Response (Doc. 30) and Affidavit (Doc. 34), and Jenkins' Reply (Doc. 50), the Court concluded that an evidentiary hearing was necessary.  28 U.S.C. § 2255 ("An evidentiary hearing on a § 2255 motion is required unless the record 'conclusively show[s] that the prisoner is entitled to no relief.'").  The Court appointed counsel for Jenkins and offered an opportunity for additional briefing (Doc. 53).  On November 17, 2020, the Court held an evidentiary hearing via secured Zoom teleconferencing.  Jenkins was present with attorney Joslyn Anthony Sandifer.  Assistant United States Attorney Laura Reppert appeared on behalf

of the United States. The Court heard testimony from Agent Matthew W. McKnight of the Drug Enforcement Administration, Detective Shane M. Drazic of the Kirkwood, Missouri Police Department, and Sergeant Jared A. Leckrone of the Illinois State Police. The Court also heard arguments from counsel regarding the entire petition. With briefing and the evidentiary hearing complete, Petitioner Jenkins' motion to vacate, set aside, or correct sentence is ripe for ruling. For the reasons articulated below, Jenkins' motion is **DENIED**.

## Background

The Court takes the following facts from testimony heard on November 17, 2020, the pleadings in this matter, the record in Jenkins' Case No. 13-cr-30125 and the appellate court decision in *United States v. Jenkins*, 850 F.3d 912 (7th Cir. 2017).[3] In January 2012, the Drug Enforcement Administration ("DEA") was investigating an ongoing drug trafficking conspiracy in this district. Agent McKnight and Detective Drazic were leading the investigation. During the investigation, McKnight and Drazic obtained authorization to monitor phone calls of suspected drug distributors Cortez Jarbarro and Tyrone Carroway, ultimately to intercept details of future drug transactions and identify their associates. Using the information received from these intercepted phone calls, McKnight and Drazic identified the voice of an associate whom they referred to as "unknown male."

---

[3] The Court "has the power, in fact the obligation, to take judicial notice of the relevant decisions of courts and administrative agencies, whether made before or after the decision under review. Determinations to be judicially noticed include 'proceedings in other courts, both within and outside of the federal judicial system if the proceedings have a direct relation to matters at issue." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996).

3

On January 14, 2012, DEA agents intercepted a highly coded call between Carroway and the "unknown male" leading McKnight and Drazic to suspect a forthcoming narcotics transaction. McKnight, Drazic, and other DEA agents established surveillance at a purported drug distribution site and Drazic observed a black SUV arrive and leave the site. After reviewing the vehicle's registration information and comparing the information to Carroway's phone records, McKnight and Drazic suspected the "unknown male" was likely Petitioner Jenkins, although both McKnight and Drazic testified that there would have been no way for them to actually identify who was driving the vehicle on January 14th without stopping the vehicle. On January 28, 2012, DEA agents again intercepted a coded phone call with the same phone number and voices as they heard on January 14th, leading them to suspect another forthcoming narcotics transaction. DEA agents again established surveillance at the purported drug distribution site and Drazic observed the same black SUV from January 14th arrive at and leave the site.

Drazic and McKnight coordinated with Illinois State Police's Sergeant Leckrone to discuss stopping the vehicle on January 28th. McKnight, Drazic, and Leckrone all testified consistently that they spoke multiple times. During these conversations, McKnight and Drazic shared the vehicle details with Leckrone and further instructed Leckrone to develop his own probable cause to stop the vehicle. McKnight specifically testified that he believed there was sufficient probable cause to stop the vehicle because of the DEA investigation, but that he did not want to compromise the ongoing investigation so he asked Leckrone to first determine if there were violations of Illinois

law which would permit Leckrone to stop the vehicle. Drazic testified similarly, stating that he told Leckrone to "do what he needed to do" but to "let him go" if Leckrone thought there was no reason to stop the vehicle. McKnight and Drazic stated that they did not tell Leckrone to fabricate probable cause, but only wanted Leckrone to stop the vehicle if there was a reason unrelated to the ongoing investigation to do so. Leckrone confirmed that he understood McKnight and Drazic's instructions to mean that he should pull over the identified vehicle if he had a basis under Illinois to do so.

Leckrone also testified that after speaking to McKnight and Drazic he did not know the specifics of the DEA investigation, but did know the investigation was drug related in nature. He also testified that the DEA did not know what was or was not in the vehicle. Leckrone located the vehicle fitting the description provided by McKnight and Drazic and observed that it had illegally tinted windows. Leckrone then pulled behind the vehicle and observed though the rear windshield that the driver was not wearing a seat belt. Leckrone also saw that the vehicle's registration was not secured properly. Leckrone therefore turned his lights on and conducted the traffic stop. After stopping the vehicle, Leckrone approached the driver side door of the vehicle and observed the driver – now identified as Jenkins – attempting to secure his seat belt. Jenkins admitted that he had not been wearing a seat belt at the time Leckrone stopped him. *Jenkins*, 850 F.3d at 915. At that time Leckrone testified to smelling a cannabis odor, and so asked Jenkins to exit the vehicle. Leckrone then conducted a vehicle search, which he stated was identical to every other "general search" that he conducted regularly in his

5

employment. During the search, Leckrone located cocaine under the dash, above the floor of the vehicle, and Jenkins was arrested.

Following Jenkins' arrest, Leckrone delivered the video tape of the traffic stop to the Illinois State Police Headquarters in Collinsville, Illinois, and secured "it into evidence." He testified that after securing the video into evidence, he had nothing more to do with the video and was not sure why the video was not requested during Jenkins' criminal proceedings. Leckrone also confirmed that he did not find evidence of cannabis in the vehicle, although he testified that the vehicle was in a state of disarray with dirt and trash throughout. Finally, Leckrone testified that after stopping the vehicle he learned that Jenkins' driver's license was suspended. Leckrone explained that even if Jenkins had not been arrested, Jenkins would not have been permitted to drive away in the vehicle because of his suspended driver's license. Instead, Leckrone would have contacted a tow company to tow the vehicle, but before releasing the vehicle to the tow company, Leckrone would have been required to conduct a record or "inventory check" of the vehicle. Leckrone explained that a record/inventory check is conducted just like the general search he conducted on Jenkins' vehicle. Therefore, Leckrone concluded that had he not located the cocaine when conducting his general search based on his suspicions of cannabis in the vehicle, Leckrone believed he would have located the cocaine during the records/inventory check.

Following his arrest, Attorney Turner Rouse was appointed to represent Jenkins (13-cr-30125, Doc. 125). On April 2, 2014, Jenkins filed his motion to substitute counsel, alleging that he and Rouse were not on the "same page" (13-cr-30125, Doc. 196; Doc. 655

6

at 3:8). Jenkins was concerned Attorney Jenkins was not filing certain pretrial motions Jenkins had requested; however, at the hearing, Jenkins admitted that he and Rouse had not yet discussed the possible motion (13-cr-30125, Doc. 655 at 10:10-10:24, 15:20-15:22). Attorney Rouse stated that he did not believe there was an irretrievable conflict between him and Jenkins, and instead asked for additional time to file pre-trial motions (13-cr-30125, Doc. 655 at 17:7-17:21). The court denied Jenkins' request, but did grant him additional time to file pre-trial motions (13-cr-30125, Doc. 209). Rouse then filed a motion to suppress challenging the search of Jenkins' vehicle and cell phone (13-cr-30125, Doc. 222). However, Rouse did not challenge the lawfulness of the traffic stop, nor did he question whether there was sufficient probable cause to conduct the traffic stop based on the "collective knowledge doctrine."

## Legal Standard

Section 2255 permits prisoners to petition their sentencing court for relief from their sentence if the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under section 2255 is "reserved for extraordinary situations" and cannot substitute for direct appeals. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Therefore, issues not raised on direct appeal are barred from collateral review absent either a showing of good cause for the failure resulting in actual prejudice, or that a refusal to consider the issue would lead to a "fundamental miscarriage of justice." *Id.*

Jenkins ultimately bears the burden to prove the allegations in his Petition warrant relief under Section 2255. *Stetson v. United States*, 417 F.2d 1250, 1253 (7th Cir. 1969).

Jenkins' primary argument relates to his claim of ineffective assistance of counsel. Ineffective assistance of counsel claims may be brought in a collateral proceeding under section 2255 regardless of whether the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on his ineffective assistance claim, Jenkins must ultimately show that "his counsel was deficient, and that this deficiency prejudiced him." *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010). For the first prong, Jenkins must demonstrate that his counsel's representation fell below the objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Here, Jenkins must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance the Court." *Strickland v. Washington*, 466 U.S. 668, 669 (1984); *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) ("Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment."). For the second prong, Jenkins must demonstrate he was prejudiced by his counsel's deficient performance, or in other words, that without counsel's defective assistance, the outcome of Jenkins' case would have been different. *Prewitt*, 83 F.3d at 819 ("A mere possibility of prejudice does not qualify as *actual* prejudice.") (emphasis in original).

When a claim of ineffective assistance of counsel is premised on an attorney's alleged failure to file a motion to suppress – which is Jenkins' primary argument here – the defendant must prove that the motion would have been meritorious. *United States v.*

8

*Cieslowski*, 410 F. 3d 353, 360 (7th Cir. 2005). Failure to file a motion to suppress is objectively reasonable and does not constitute ineffective assistance where the motion would have little or no chance of success. *Koons v. United States*, 639 F. 3d 348, 354 (7th Cir. 2011); *U.S. v. Bustamante*, 367 Fed.Appx. 708, 710 ("An attorney is not required to pursue an argument that can lead only to a dead end for his client."). Finally, at the evidentiary hearing, the district court possesses broad discretion to evaluate the credibility of contradictory testimony. *Gant*, 627 F.3d 677, 681-82 (7th Cir. 2010).

## Analysis

### Ground 1: Denial of Motion to Substitute Counsel

Jenkins argues that the district court wrongly denied his motion to substitute counsel in violation of "his Sixth Amendment Right to choose his attorney." (Doc. 1-1, at p. 2; Doc. 19). In support, Jenkins claims that Attorney Rouse refused to file pre-trial motions to suppress that he requested. However, at the hearing on Jenkins' motion, Jenkins specifically admitted that he had not yet spoken with Attorney Rouse about the motions. Attorney Rouse also sought additional time from the Court to file additional pre-trial motions should they be meritorious, which the Court granted. Finding that no irretrievable conflict existed, the Court denied Jenkins motion to substitute counsel. Jenkins claims this was an error in violation of his Sixth Amendment right to choose his own counsel.

The Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys

9

appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). The Sixth Amendment, however, does not give defendants the right to choose who will represent them when the defendant requires counsel to be appointed for them. *United States v. Gonzales-Lopez*, 548 U.S. 140, 151-52 (2006); *United States v. Turner*, 594 F. 3d 946, 948 (7th Cir. 2010). Consequently, Jenkins had no right to choose his own appointed counsel.

Preliminarily, the Court questions whether Jenkins' claims of error against the Court are ripe for review considering he did not raise them on direct appeal. *Prewitt*, 83 F.3d at 812 (Claims not raised on direct appeal are procedurally barred unless the petitioner can show good cause for failing to raise the issue on direct appeal, actual prejudice from that failure, or that refusing to hear the claim would lead to a fundamental miscarriage of justice). Regardless, and as more fully detailed below, the Court finds that Attorney Rouse's decision to not pursue a motion to suppress challenging the lawfulness of the traffic stop or the applicability of the "collective knowledge doctrine" was reasonable because the motion would not have been successful and would not have changed the outcome of Jenkins' trial and appeal. Consequently, Jenkins cannot establish that Rouse's assistance was ineffective. *Koons*, 639 F. 3d at 354 (Failure to file a motion to suppress is objectively reasonable and does not constitute ineffective assistance where the motion would have little or no chance of success). Because Jenkins cannot establish that his counsel's assistance was ineffective, the Court's decision to deny Jenkins' motion to substitute counsel did not violate Jenkins' Sixth Amendment Right or otherwise prejudice Jenkins so to warrant extraordinary relief under Section 2255. *Caplin*, 491 U.S.

10

617 at 624 (Defendants do not have a cognizable complaint under the Sixth Amendment so long as they were "adequately represented by attorneys appointed by the courts.").

### Grounds 2 and 3: ineffective assistance of counsel

Jenkins claims his counsel rendered ineffective assistance because of how Attorney Rouse handled the evidence of the traffic stop leading to Jenkins' arrest, and by ultimately conceding that the traffic stop was lawful. In his briefing, Jenkins specifically complains that (a) Rouse did not obtain his drug test results following his arrest (Doc. 1-1, pg. 3; Doc. 5; Doc. 19), (b) Rouse did not challenge the lawfulness of the traffic stop (Doc. 1-1, pp. 3, 4-7; Doc. 19), and (c) Rouse did not move to dismiss Jenkins' indictment after learning that the video of the traffic stop had been destroyed (Doc. 19, pg. 1). At his hearing, Jenkins narrowed his argument to specifically focus on Rouse's alleged failure to challenge the lawfulness of the traffic stop leading to Jenkins arrest, and the application of the "collective knowledge doctrine." Jenkins argues that the traffic stop was unlawful because Leckrone did not have independent probable cause to conduct the traffic stop, and that the DEA did not share enough details of its investigation so to impute their probable cause to Leckrone under the collective knowledge doctrine. Jenkins maintains that Rouse's failure to file a motion to suppress amounts to inadequate assistance which prejudiced Jenkins' trial and appeal.

The Government contends that Leckrone had probable cause to stop Jenkins based on both his independent observations of multiple Illinois motor vehicle violations, and the collective knowledge doctrine. As such, the Government argues that Attorney Rouse rendered adequate assistance because any motion to suppress the traffic stop would have

11

been unsuccessful. The Government relies heavily on Attorney Rouse's Affidavit to demonstrate he provided reasonable assistance and that the deficiencies, if any, would not have prejudiced Jenkins' case. (Doc. 34). Specifically, Rouse stated that he did not believe a motion would be successful based on his professional judgment (Doc. 34).

Upon review of the evidence presented by Jenkins and the testimony of McKnight, Drazic, and Leckrone, the Court finds that Leckrone had sufficient probable cause to conduct the traffic stop. Leckrone testified credibly that he had a reasonable basis to believe Jenkins had committed at least three traffic offenses based on his observation of the vehicle's window tint, the license registration, and watching the driver attempt to secure his seat belt while driving. Leckrone therefore had his own independent basis of probable cause for the traffic stop. *United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008) (Probable cause for a traffic stop exists when an officer "has an objectively reasonable basis to believe a traffic law has been violated . . . even a minor traffic offense."); *United States. v. Cashman*, 216 F.3d 582, 596 (7th Cir. 2000) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver."); *United States v. $304,980 in U.S. Currency*, 2013 WL 54055, at *9 (S.D. Ill. Jan. 3, 2013), *aff'd sub nom*, *United States v. $304,980.00 in U.S. Currency*, 735 F.3d 812 (7th Cir. 2013) (collecting cases).

The Court notes that Leckrone testified credibly that while driving behind Jenkins' vehicle he personally observed the drive attempting to put on his seat belt, and that even after stopping the vehicle, the driver continued to try and secure his seat belt as Leckrone

12

arrived at the driver's side door.  Importantly, the Court finds it significant that Jenkins does not dispute Leckrone's account of the traffic stop, and specifically admitted that he was not wearing a seat belt when Leckrone stopped his vehicle.  *Jenkins*, 850 F.3d at 915.  Leckrone's personal observations and Jenkins' admission that he violated Illinois traffic law for failing to wear a seat belt[4], necessarily concludes, that Leckrone had independent probable cause to conduct the traffic stop, irrespective of the collective knowledge doctrine.  *United States v. Downthard*, 500 F.3d 567, 569 (7th Cir. 2007) (Holding that probable cause existed for a traffic stop based on the officer's reasonable observation that defendant was not wearing a seat belt because driving without wearing a seat belt necessarily violates Illinois law); *Hernandez-Rivas*, 513 F.3d at 758-59; *Cashman*, 216 F.3d at 596.

Regardless, the Court also finds that the collective knowledge doctrine applies here, and the DEA had probable cause to stop Jenkins' vehicle, which can be imputed to Leckrone.  "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). McKnight and Drazic testified credibly about the specifics of the DEA investigation.  Accordingly, based on the facts and circumstances surrounding the phone calls and surveillance of Jenkins' vehicle on January 14th and January 28th, in addition to

---

[4] 625 ILCS 5/12-603.1 requires all drivers of motor vehicles operated on a street or highway in the State of Illinois to wear a properly adjusted and fastened seat belt.

their experience in policing narcotics transactions, it was reasonable for McKnight and Drazic to believe that a drug transaction had occurred on January 28th, so to establish sufficient probable cause to stop the vehicle. *See Williams*, 627 F.3d at 251-52. The DEA task force's probable cause could then be imputed to Leckrone because McKnight and Drazic made Leckrone aware of the specific vehicle involved in an ongoing DEA investigation, and asked Leckrone to stop the vehicle.

The Seventh Circuit routinely applies the collective knowledge doctrine to situations, where, as here, "DEA agents ask local law enforcement officers to stop a specifically identified vehicle, and the local officers had no knowledge of the facts underlying the DEA's probable cause." *Williams*, 627 F.3d at 251-53 (collecting cases). Although Leckrone testified that he suspected the driver of the vehicle was connected to a drug transaction because the DEA was the agency requesting him to make the traffic stop, Leckrone was not required to have independent knowledge of the facts underlying the DEA's probable cause in order for the probable cause to be imputed to him. *Id.* As McKnight, Drazic, and the DEA had sufficient probable cause to stop Jenkins' vehicle, by involving Leckrone in their investigation efforts, their probable cause could be imputed to Leckrone, even if Leckrone had not had independent probable cause for the traffic stop[5].

---

[5]This finding is also consistent with the court's prior findings that Leckrone's search of Jenkins' vehicle was permissible under the collective knowledge doctrine. *United States v. Jenkins*, 850 F.3d 912, 921 (7th Cir. 2017) (The court found that the vehicle search was invalid under the search incident to arrest exception, but permissible under the collective knowledge doctrine).

14

Accordingly, because there was sufficient probable cause to support the traffic stop, any motion Attorney Rouse could have filed challenging the lawfulness would have been unsuccessful. Jenkins has therefore failed to establish that Attorney Rouse's assistance was ineffective so to warrant extraordinary relief under Section 2255. *Koons*, 639 F. 3d at 354 (Failure to file a motion to suppress is objectively reasonable and does not constitute ineffective assistance where the motion would have little or no chance of success); *Strickland v. Washington*, 466 U.S. 668, 669 (1984); *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004).

As for Jenkins remaining claims, the Court also finds that Attorney Rouse's decision to not obtain Jenkins' drug test results or moving to dismiss the indictment based on the missing tape of the traffic stop were reasonable and do not amount to ineffective assistance of counsel. Regarding the drug test results, Leckrone specifically admitted that he did not recover evidence of cannabis in Jenkins' vehicles. The Government relied on this testimony to support its position that Leckrone had independent probable cause to search Jenkins' vehicle – an argument that this Court rejected, and the Seventh Circuit affirmed. *Jenkins*, 850 F.3d 912 at 921. Therefore, any additional supporting evidence as to the non-presence of cannabis in the vehicle would not have changed the conclusion that the vehicle *search* was lawful under the collective knowledge doctrine, and further has little, if any, relevance to Jenkins' arguments in this petition related to the traffic *stop*.

Similarly, the Court finds that the fact that no video tape of the traffic stop was reviewed by Jenkins or available at trial would not change the Court's findings that the

traffic stop was lawful. Leckrone testified credibly about his recollection of the traffic stop, and Jenkins admitted to not wearing a seat belt, so to justify the traffic stop. Jenkins has not offered any contrary version of the facts and has not otherwise suggested that Leckrone's recollection of the traffic stop was inaccurate. Therefore, Jenkins does not provide any argument as to why the video tape would be necessary, and the Court cannot find any basis in the record to conclude that a video tape of the traffic stop would have had any impact on Jenkins' trial or appeal. Accordingly, the Court finds that Jenkins has not met his burden to show that Rouse rendered ineffective assistance of counsel, or that he is otherwise entitled to relief under 28 U.S.C. § 2255.

## Disposition

For the reasons articulated above, the Court **DENIES** Jenkins' petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. The Clerk is **DIRECTED** to enter judgment in favor of the United States and against Petitioner Antwon Deshane Jenkins.

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court entering a final order adverse to a petitioner to issue or deny a certificate of appealability. 28 U.S.C. 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." This standard requires the petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); see also *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012). The undersigned concludes that Jenkins has not

satisfied his burden of showing that was entitled to relief on the merits of his petition. Reasonable jurists would not find this conclusion debatable. Accordingly, the Court **DECLINES** to issue a certificate of appealability.

Finally, the Court notes that Jenkins filed two *pro se* motions prior to the evidentiary hearing: his Motion to Supplement (Doc. 51) and Motion for Transcript (Doc. 55). Because Jenkins was represented by counsel, he was to only file motions through counsel. Regardless, Jenkins was permitted to offer evidence at the November 22, 2020 hearing testimony in lieu of the briefing he sought to provide in his Motion to Supplement. As for his Motion for Transcript, Jenkins can request such copies through his Counsel. Accordingly, both the Motion to Supplement (Doc. 51) and Motion for Transcript (Doc. 55) are **DENIED**.

**SO ORDERED.**

Dated: November 25, 2020

───────────────────────────
DAVID W. DUGAN
United States District Judge